# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Oct 08, 2021
s/ DarylOlszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 21 MJ 174
)
Cellular telephone assigned cell number (702) )
726-0641(Target Cell Phone), whose service provider )
is Verizon. )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. Sections 841 and 846 | Conspiracy to distribute controlled substances |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* 04/06/2022 *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**BRYAN AYERS**
Digitally signed by BRYAN AYERS
Date: 2021.10.08 09:56:39 -05'00'

*Applicant's signature*

DEA Special Agent Bryan S. Ayers
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

Date: 10/8/2021

*Judge's signature*

City and state: Milwaukee, WI    Hon. William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Bryan S. Ayers, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) (1) (A) for information about the location of the cellular telephone assigned cell number **(702) 726-0641**("**Target Cell Phone**"), whose cell phone provider is VERIZON WIRELESS, a wireless telephone service provider headquartered in New York City, New York. **Target Cell Phone** is described herein, and in Attachment A, and the location information to be seized is described herein, and in Attachment B.

2. I have been employed as a Special Agent with the Drug Enforcement Administration ("DEA") since January 2021. I am currently assigned to the DEA Milwaukee District Office. As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3. I have participated in complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have participated in complex drug trafficking investigations. More specifically, my training and experience includes the following:

   a. I have been involved with investigations that utilized informants to investigate drug trafficking. Through informant interviews, and debriefings of individuals

involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances;

b.     I have been involved with investigations that relied upon informants to obtain controlled substances from dealers;

c.     I have experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of search warrants where controlled substances, weapons, and drug paraphernalia were seized;

d.     I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e.     I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.     I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g.     I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h.     I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

i.     I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

4.     I am currently participating in an investigation of a drug trafficking organization (DTO) operating in the Milwaukee, Wisconsin area. According to confidential source information, cooroborated by law enforcement, this DTO gets deliveries of cocaine from a semi-truck driver and distributes the cocaine throughout the Milwaukee, Wisonsin area, as well as Illinois and Indiana. The drug proceeds are then transferred to money couriers or deposited into

bank accounts utilized by Mexican drug cartels to launder proceeds of drug sales.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846 have been committed, are being committed, and will be committed by the user of **(702) 726-0641**, ("**Target Cell Phone**") and others not yet identified. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

6. On June 16, 2004, Ruben RAMOS was arrested for conspiracy of cocaine possession with intent to distribute. Furthermore, on June 11, 2005, RAMOS was convicted and sentenced to 120 months in prison.

7. In January 2021, DEA Milwaukee was contacted by DEA Chicago concerning Ruben RAMOS. RAMOS was observed on surveillance, meeting with an individual in Chicago, IL. RAMOS was traffic stopped after this meeting and was positively identified. Law Enforcement also made contact with the subject that RAMOS had met with. The individual stated that RAMOS had previously turned over bags containing US currency to him. The individual also stated that the US currency was obtained through illegal means. A consent search of the individual's residence resulted in the seizure of $175,893.

8. In April, 2021, DEA Milwaukee was again contacted by DEA Chicago concerning a sighting of Ruben RAMOS during surveillance on March 22, 2021 in Burbank, IL. RAMOS was observed by surveillance to place a box in the back seat of an individual's vehicle, and left the area. This was a different individual than is referred to in paragraph 7. The

individual was traffic stopped following the meeting with RAMOS. During a consent search of the vehicle that RAMOS placed the box into, $204,999 USC was seized. The UC Currency was located in the box that RAMOS had delivered. The individual advised law enforcement that an unknown Hispanic male (RAMOS) provided the box to him.

9. In May, 2021, DEA Milwaukee case agents and Racine, WI detectives met with a Racine confidential source (CS). The CS advised s/he had known RAMOS for over 20 years. Over that time frame, the CS admitted to participating in numerous drug transactions with RAMOS. The CS also advised that RAMOS had told her/him about the recent seizures noted in paragraphs 7/8.

10. The CS advised that RAMOS travelled to Mexico in May, 2021 to speak to his cocaine source of supply due to the recent money seizures. Upon return to Wisconsin, RAMOS claimed to have secured a new source of supply for 20-40kg quantities of cocaine. RAMOS was also attempting to purchase/rent an auto repair/sales shop on Sheridan Rd, Kenosha in order to launder money and receive the cocaine shipments. Law Enforcement was able to confirm that RAMOS was attempting to obtain permits for the shop, but that his request was denied.

11. In July, 2021, DEA Milwaukee case agents and Racine, WI detectives again met with the Racine CS. The CS stated that RAMOS was getting multi-kilogram quantities of cocaine delivered to him via semi-truck. The CS advised that RAMOS described the driver of the semi truck as a Cuban male driver around 50 years old. The CS advised that the semi-truck driver would pick routes within two hours of Racine, WI, close to RAMOS' residence, to deliver the cocaine. Once a route was picked, a call would be placed to RAMOS to plan the delivery. The CS stated that RAMOS would either meet the driver at a truck stop or go to the actual facility where the legitimate shipment was being offloaded. RAMOS advised the CS that he had

recently received a large shipment of cocaine from the Cuban truck driver. The CS stated that RAMOS told the CS that he was going to be ordering 18 kilograms of cocaine in the coming weeks. The CS advised case agents that RAMOS uses multiple phones, one of which being, **(702) 726-0641 (Target Cell Phone)**. Lasty, the CS further stated of all the phones **(702) 726-0641(Target Cell Phone)** is always with RAMOS.

12. I and other law enforcement officers believe the CS to be reliable because he/she has provided intelligence concerning the drug trafficking activities for RAMOS, as well as other targets of investigations. Law Enforcement has been able to cooberate the CS's information independently through TOLL analysis, law enforcement data bases, surveillance of RAMOS and other targets. The CS has also made statements against his/her own penal interests. The CS is working with law enforcement seeking consideration for judicial leniency with her/his current drug charges.

13. On October 4, 2021, an administrative subpoena was issued to VERIZON WIRELESS requesting subscriber information and call detail records on **(702) 726-0641(Target Cell Phone)**. VERIZON WIRELESS responded to the subpoena and provided subscriber information. This account is registered to "PREPAID PREPAID". This account is a prepaid account and has been active since September 26, 2021. Based upon my training and experience it is a common practice for DTO members to use cellular phones that are prepaid or in other people's names.

14. Based upon my training, experience, and familiarity with the investigation, I believe that Ruben RAMOS is the user of **(702) 726-0641(Target Cell Phone)** and is using **(702) 726-0641(Target Cell Phone).** Case agents believe the location information requested will assist in identifying Ruben RAMOS' source of supply, stash locations, and other co-

conspirators involved in their drug trafficking organization.

15. In my training and experience, I have learned that VERIZON WIRELESS is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16. Based on my training and experience, I know that VERIZON WIRELESS can collect E-911 Phase II data about the location of **(702) 726-0641**(**Target Cell Phone**), including by initiating a signal to determine the location of **(702) 726-0641(Target Cell Phone)** on the VERIZON WIRELESS network or with such other reference points as may be reasonably available.

17. Based on my training and experience, I know that VERIZON WIRELESS can collect cell-site data about **(702) 726-0641** (**Target Cell Phone**).

18. On August 9, 2021, the Honorable Stephen C. Dries, United states Magistrate Judge in the Eastern District of Wisconsin, signed a search warrant authorizing phone location information on **(262) 498-0341** (**Previously Used Target Cell Phone**) for a period of 45 days. The court order was sent to VERIZON WIRELESS on August 10, 2021. Case agents started receiving phone location information for **(262) 498-0341** (**Previously Used Target Cell Phone**) on August 10, 2021, at 6:13pm.

19. During those 45 days, Ruben RAMOS has continued to communicate with drug traffickers on his criminal phone. Ruben RAMOS was observed by case agents via cellphone ping data making multiple quick trips to Chicago, IL. These trips are believed by case agents to be for the purpose of dropping off money or picking up drugs.

20. On September 23, 2021, the Honorable Stephen C. Dries, United States Magistrate Judge in the Eastern District of Wisconsin, signed a search warrant authorizing the extension of phone location information on **(262) 498-0341** (**Previously Used Target Cell Phone**) for a period of 45 days. Due to funding delays, the technical installation of the ping extension on **(262) 498-0341** (**Previously Used Target Cell Phone**) were never installed. The final ping location was received on September 22, 2021, at 11:49am.

21. On September 26, 2021, at 12:09am, Ruben RAMOS was pulled over by the Mount Pleasant Police Department for speeding. During the traffic stop Ruben RAMOS was charged for the possession of cocaine and had his cell phone **(262) 498-0341** (**Previously Used Target Cell Phone**) seized. Upon Ruben RAMOS' release, he purchased new cell phone **(702) 726-0641(Target Cell Phone).** This new cell phone number was verified by a CS as well as TOLL analysis. The TOLL analysis shows activation of **(702) 726-0641(Target Cell Phone)** on September 26, 2021, as well as the first cellular activity.

22. A debriefing of a new confidential source (CS) positively identified Ruben RAMOS as an individual that received a multiple kilogram quantity of cocaine from the CS. The CS further stated he had picked up money from Ruben RAMOS on multiple occasions to deliver across state lines for the purpose of purchasing drugs.

23. I and other law enforcement officers believe the new CS to be reliable because he/she has provided intelligence concerning the drug trafficking activities for RAMOS, as well as other targets of investigations. Law Enforcement has been able to cooberate the CS's information independently through TOLL analysis, law enforcement data bases, surveillance of RAMOS and other targets. The CS has also made statements against his/her own penal interests. The CS is working with law enforcement seeking consideration for judicial leniency with her/his current drug charges.

## AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

25. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days after the collection authorized by the warrants has been completed. There is reasonable cause to believe that providing immediate notification of the warrants may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **(702) 726-0641(Target Cell Phone)** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search

warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

26. I further request that the Court direct VERIZON WIRELESS to disclose to the government any information described in Attachment B that is within the possession, custody, or control of VERIZON WIRELESS. I also request that the Court direct VERIZON WIRELESS to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with VERIZON WIRELESS's services, including by initiating a signal to determine the location of **(702) 726-0641**(**Target Cell Phone**) on VERIZON WIRELESS's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate VERIZON WIRELESS for reasonable expenses incurred in furnishing such facilities or assistance.

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **(702) 726-0641**(**Target Cell Phone**) outside of daytime hours.

ATTACHMENT A

Property to Be Searched

1. The cellular telephone assigned cell number **(702) 726-0641(Target Cell Phone)**, whose service provider is VERIZON WIRELESS, a wireless telephone service provider headquartered in New York City, New York.

2. Information about the location of the **(702) 726-0641(Target Cell Phone)** that is within the possession, custody, or control of VERIZON WIRELESS.

ATTACHMENT B

Particular Things to be Seized

All information about the location of the **(702) 726-0641**(**Target Cell Phone**) described in Attachment A for a period of forty-five days, during all times of day and night. "Information about the location of the **(702) 726-0641**(**Target Cell Phone**) includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of VERIZON WIRELESS, VERIZON WIRELESS is required to disclose the Location Information to the government. In addition, VERIZON WIRELESS must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with VERIZON WIRELESS's services, including by initiating a signal to determine the location of **(702) 726-0641**(**Target Cell Phone**) on VERIZON WIRELESS's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate VERIZON WIRELESS for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).